UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| IN RE: DICAMBA HERBICIDES LITIGATION | ) ) | MDL No. 2820 |
|---|---|---|

# MEMORANDUM and ORDER

Plaintiffs in this Multi-district Litigation filed a three-count Antitrust Class Action Master Complaint against defendant Monsanto Company on August 1, 2018. Monsanto has moved to dismiss.

## Factual Background

The alleged facts are taken as true for the purposes of the motion to dismiss. Plaintiffs are Sam Branum, a citizen of Missouri who farms soybeans and other crops in Missouri, and Wapsie Farms Partnership, a farm located in Iowa. In 2016, defendant Monsanto released for sale Xtend seeds containing an herbicide-tolerant genetic trait that would allow the crop to survive application of both Roundup herbicide and dicamba herbicide. Dicamba had previously not been used over-the-top of crops because it is volatile and prone to moving off-target, harming non-resistant plants. Monsanto, as part of an alleged joint venture with BASF Corporation (a producer of dicamba herbicide), developed a "new" dicamba, XtendiMax with VaporGrip Technology, that was supposed to be less prone to volatility and drift. Plaintiffs claim that although the Xtend seeds do indeed survive application of dicamba (and XtendiMax), the application of dicamba-based herbicides (whether XtendiMax or not) to the Xtend seeds results in damage to neighboring, non-resistant crops due to drift. Because of their fear of crop damage, plaintiffs allege that they and other farmers are forced to defensively purchase and plant

Xtend seeds, which cost more than other seeds. As a result, as plaintiffs claim, Monsanto has artificially increased demand for its Xtend seeds and has reaped monopolistic profits that it otherwise would not have.

Plaintiffs purport to represent a class of "persons and entities in the United States who, after 2015, were direct purchases of Monsanto's dicamba-tolerant traits in soybean seeds." Count I of the complaint is for furtherance of a monopoly. Count II is for attempt to monopolize. Count III is for conspiracy to monopolize. All three counts are for violations of Section 2 of the Sherman Act, 15 U.S.C. § 2.

## **Legal Standard**

Defendant has moved to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). The purpose of a Rule 12(b)(6) motion to dismiss for failure to state a claim is to test the legal sufficiency of a complaint so as to eliminate those actions "which are fatally flawed in their legal premises and deigned to fail, thereby sparing litigants the burden of unnecessary pretrial and trial activity." *Young v. City of St. Charles*, 244 F.3d 623, 627 (8th Cir. 2001) (citing *Neitzke v. Williams*, 490 U.S. 319, 326-27 (1989)). "To survive a motion to dismiss, a claim must be facially plausible, meaning that the 'factual content. . . allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Cole v. Homier Dist. Co., Inc.*, 599 F.3d 856, 861 (8th Cir. 2010) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). The Court must "accept the allegations contained in the complaint as true and draw all reasonable inferences in favor of the nonmoving party." *Id.* (quoting *Coons v. Mineta*, 410 F.3d 1036, 1039 (8th Cir. 2005)). However, "[t]hreadbare recitals of the elements of

a cause of action, supported by mere conclusory statements," will not pass muster. *Iqbal*, 556 U.S. at 678.

## Discussion

Monsanto contends that the Antitrust Master Class Action Complaint must be dismissed for three reasons: (1) plaintiffs lack standing because they are indirect purchasers, (2) plaintiffs fail to plead a plausible antitrust violation, and (3) plaintiffs fail to adequately plead willfulness, specific intent to monopolize, and conspiracy. For the following reasons, the Court finds plaintiffs lack standing to bring their claims and will dismiss the complaint without prejudice.

"Section 2 of the Sherman Act prohibits conduct that furthers a monopoly, an attempt to monopolize, or a conspiracy to monopolize any party of trade or commerce." *Schoenbaum v. E.I. Dupont De Nemours and Co*, 517 F. Supp. 2d 1125, 1144 (E.D. Mo. 2007) (citing 15 U.S.C. § 2). The Sherman Act sets forth criminal penalties for violations, and "the Clayton Act authorizes private damage suits for violations of federal antitrust laws by persons injured in their 'business or property by reason of anything forbidden in the antitrust laws....'" *Midwest Communications v. Minnesota Twins, Inc*., 779 F.2d 444, 449-50 (8th Cir. 1985) (quoting 15 U.S.C. § 15).

Defendant argues that plaintiffs cannot show they have standing to bring their claims under the Sherman and Clayton Acts because plaintiffs were not direct purchasers of the Xtend seeds. Under the seminal case of *Illinois Brick Co. v. Illinois*, 431 U.S. 720, 729 (1977), only the "overcharged direct purchaser" from a monopoly supplier may sue for damages under Section 4 of the Clayton Act. The reasons for this holding are

3

twofold: where one or more intermediaries exist between defendant and plaintiff, the possibility arises for (1) multiple lawsuits and (2) complex and uncertain proof of damages. *Id.* at 730, 732. Allowing only the direct purchaser to bring claims under the Sherman and Clayton Acts avoids these potential problems.

Plaintiffs do not allege that they purchased the seed directly from Monsanto, but instead that they were "direct purchasers of Monsanto's dicamba-tolerant <u>trait</u> in soybean seeds." (Emphasis added.) The necessary purchase connection, they contend, is that they were required to enter into a license agreement with Monsanto to use the trait technology as part of the seed purchase. That agreement, the Monsanto Technology/Stewardship Agreement ("MTSA"), states in pertinent part that the farmer agrees to

> pay all applicable royalties and technology fees for the use of the Monsanto Technologies and applicable fees due Monsanto that are part of, associated with the Seed purchase price or that are invoiced for the Seed.

Plaintiffs thus insist that the MTSA, entered into with Monsanto, makes plaintiffs "direct purchasers" of the Monsanto Technology—the trait—such that they have standing under *Illinois Brick*.

This Court disagrees. Plaintiffs have not adequately pleaded that they were direct purchasers of the seed or even the trait. The Fourth Circuit addressed an analogous situation in which purchasers of computers with Microsoft software sued Microsoft for its monopolistic behaviors that resulted in computer purchasers paying artificially inflated prices for computers. *Kloth v. Microsoft Corp.*, 444 F.3d 312, 318 (4th Cir. 2006). Consumers did not purchase software directly from Microsoft, but rather they bought computers from retailers with pre-installed Microsoft software. As part of the

4

transaction, the purchaser was required to enter into a license agreement with Microsoft. The Fourth Circuit held that although the license may establish a direct relationship between Microsoft and the consumer, that relationship is not sufficient to make the consumer a 'direct purchaser' within the meaning of *Illinois Brick*. *Id.* at 323. The court added that the *Kloth* plaintiffs "stand at the end of a distribution chain in which the intermediaries have independently set prices and passed on alleged overcharges." *Id.* at 322. Accordingly, the plaintiffs lacked antitrust standing against Microsoft. *Id.* at 323.

Arguably, the MTSA in this case is sufficiently different from the Microsoft license that it could suffice to create a direct purchaser relationship where the agreement in *Kloth* did not. Plaintiffs emphasize that the Microsoft license did not discuss payment of royalties or technology fees directly to Microsoft. But plaintiffs have not alleged that Monsanto did in fact impose royalties and technology fees as part of the purchase of the seeds or thereafter, much less that plaintiffs actually paid any fees or royalties. Plaintiffs do not even identify the seller of the seeds. Although they mention in their response in opposition to the motion to dismiss that the seeds they bought were Monsanto-branded, that allegation was not made in the complaint. And, even if the seeds were branded "Monsanto," that allegation would be insufficient to establish that they were actually sold by Monsanto or by an agent of Monsanto.

As a fallback position, plaintiffs suggest that an "agency" exception to the direct purchaser rule should apply to save their complaint, relying on *Blades v. Monsanto Co.*, 400 F.3d 562, 568 n.4 (8th Cir. 2005). In *Blades*, like the case at hand, plaintiffs brought antitrust claims against Monsanto after buying genetically modified seed from an

5

independent dealer licensed by Monsanto. *Id.* The farmers were "separately invoiced for the technology fee, and paid it to the dealer, who remitted it to Monsanto," and Monsanto then sent the farmer a license to plant the seed. *Id.* However, the direct purchaser requirement was not at issue in the *Blades* opinion, which addressed a matter of class certification. Nonetheless, the Eighth Circuit observed, in a footnote, that the facts of the farmers' seed-purchase-transaction were "functionally indistinguishable" from a direct purchase from an agent of Monsanto. *Id.* That footnote, by it terms, was dictum: the court described the parties' arguments on the issue as "cursory," stated that the "district court did not resolve the question," opined that the "factual record is inadequate as to the issue," and finally concluded that it would "put the question to the side, without deciding it." *Id.* Further, there was no reference to *Illinois Brick* or citation to any authority addressing the direct purchaser rule.

For these reasons, it is a stretch to say that *Blades* supports the existence of any "agency exception" to *Illinois Brick*'s direct purchaser rule, and it appears no other Eighth Circuit case supports such an exception. *See also Kansas v. UtiliCorp United, Inc.*, 497 U.S. 199 (1990) (declining to recognize exceptions to the direct purchaser rule). Indeed, following *Illinois Brick*, courts have uniformly declined to recognize exceptions to the direct purchaser rule where the plaintiff did not actually transact its purchase with the alleged monopolistic supplier. *See, e.g.*, *Lakeland Reg'l Med. Ctr., Inc. v. Astellas US, LLC*, 763 F.3d 1280, 1286 (11th Cir. 2014); *Warren Gen. Hosp. v. Amgen Inc.*, 643 F.3d 77, 91 (3d Cir. 2011); *Kloth*, 44 F.3d at 320.

6

Even if such an agency exception were recognized, the plaintiffs have not pleaded that they purchased the seeds, or the traits, from an agent of Monsanto. Unlike the scenario in the *Blades* footnote, plaintiffs here do not allege that they were "separately invoiced for the technology fee" or that they paid the fee. And again, inexplicably, they do not even identify the seller of the seed. All in all, any theoretical agency relationship is simply too conclusory to support the cause of action.

Ultimately, plaintiffs' allegations do not support that they were a direct purchaser of the seeds, or even the traits. As a result, their complaint must be dismissed, and the Court need not consider defendant's other arguments in favor of dismissal.

Accordingly,

**IT IS HEREBY ORDERED** that defendant Monsanto's motion to dismiss (#149) is GRANTED.

**IT IS FURTHER ORDERED** that plaintiffs' complaint will be DISMISSED without prejudice.

Dated this 13th day of March, 2019.

_____
STEPHEN N. LIMBAUGH, JR.
UNITED STATES DISTRICT JUDGE