**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**SOUTHEASTERN DIVISION**

| | | |
|---|---|---|
| **TANDY RAY KING,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **Main Case No. 1-18-md-02820-SNLJ** |
| **v.** | ) | |
| | ) | **Indiv. Case No. 1:19-cv-00129-SNLJ** |
| | ) | |
| **MONSANTO COMPANY,** | ) | |
| **BAYER CORPORATION,** | ) | |
| **BASF CORPORATION, and** | ) | |
| **MAURY FARMERS COOPERATIVE** | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM AND ORDER

This matter comes before the Court on plaintiff Tandy Ray King's motion to remand (#19), which is fully briefed. For the reasons set forth below, that motion is **GRANTED** and this case is hereby **REMANDED** back to the Circuit Court of Maury County, Tennessee.

## I. BACKGROUND

The following facts are taken from plaintiff's complaint and are treated as true for purposes here.

Plaintiff is a tobacco farmer who owns and operates a farm in Columbia, Tennessee. He alleges dicamba frequently causes "injury to off-target vegetation," including to his own property after Maury Farmers Cooperative purportedly sprayed his neighbor's farm with dicamba. Plaintiff has sued Maury Farmers for negligence in its application of dicamba.

1

Plaintiff has also sued Monsanto, Bayer (which acquired Monsanto in 2018), and BASF (collectively "defendants"). Plaintiff alleges "Monsanto and BASF sold [new] formulations of dicamba" that they knew were "not appreciably less volatile than prior formulations" as part of a scheme to "force farmers to defensively plant Xtend crops in future growing seasons." The term "Xtend crops" more specifically refers to a joint collaboration between Monsanto and BASF that resulted in the "Roundup Ready Extend Crop System, designed as and consisting of seed[s] containing the dicamba-resistant trait and [corresponding] dicamba herbicide[s]" including "Xtendimax, Engenia, and Fexapan[.]" In essence, plaintiff argues Monsanto and BASF conspired to create a dicamba-centric crop system that, due to dicamba's continued volatility, forced many farmers to either buy into that system or else face widespread crop damages.

Plaintiff now seeks remand after defendants jointly removed this case from the Circuit Court of Maury County, Tennessee, on the basis of federal question and diversity jurisdiction. He argues his "complaint does not present a federal question" and, moreover, "there is no diversity [in this case] because [] Maury County Farmers Cooperative is [a company] based in Maury County[,] Tennessee." Maury Farmers, for its part, has joined plaintiff's motion and says this case should be remanded to state court.

## II. STANDARD OF REVIEW

Removal statutes are strictly construed. *In Re Business Men's Assur. Co. of America*, 992 F.2d 181, 183 (8th Cir. 1993). Any doubts about the propriety of removal are to be resolved in favor of remand. *Central Iowa Power Co–op. v. Indep. Transmission Sys. Operator, Inc.*, 561 F.3d 904, 912 (8th Cir. 2009). The party seeking removal has the

burden to establish federal subject matter jurisdiction. *Id*. A civil action brought in state court may be removed to a proper district court if that district court has original jurisdiction over the lawsuit. 28 U.S.C. § 1441(a). District courts have "original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331.

To determine whether a claim arises under federal law, "[t]he general rule— known as the 'well-pleaded complaint rule'—is that a complaint must state on its face a federal cause of action in order for the action to be removable on the basis of federal-question jurisdiction." *Griffioen v. Cedar Rapids & Iowa City Ry. Co.*, 785 F.3d 1182, 1188 (8th Cir. 2015). However, a case may arise under federal law under the "substantial federal question" doctrine when a "state-law claim necessarily raise[s] a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state responsibilities." *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 314 (2005). That said, a defendant cannot "inject a federal question into an otherwise state-law claim and thereby transform the action into one arising under federal law." *Central Iowa Power Co–op.*, 561 F.3d at 912 (internal citation omitted). "If even one claim in the complaint involves a substantial federal question, the entire matter may be removed." *Pet Quarters, Inc. v. Depository Trust & Clearing Corp.*, 559 F.3d 772, 779 (8th Cir. 2009) (citing *Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 9 (2003)).

## III.  ANALYSIS

### A.  Whether this Court Possesses Federal Question Jurisdiction

In arguing this Court has federal question jurisdiction over this case, defendants focus narrowly on plaintiff's state-law strict liability failure-to-warn claim and conclude "[t]hough presented under state law, virtually every element of plaintiff's failure to warn claim—duty, materiality, reliance, causation—is governed by federal law." Defendants go on to suggest this case is "virtually identical" to the issues confronted in *Bader Farms, Inc. v. Monsanto Co*., 2017 WL 633815 (E.D. Mo. Feb. 16, 2017) (Limbaugh, J.).

In *Bader Farms*, plaintiffs sought remand arguing their nine-count complaint invoked only Missouri state law claims, thereby avoiding federal question jurisdiction. *Id.* at *1. This Court disagreed, finding that one of the nine counts—asserting fraudulent concealment—necessarily presented a substantial federal question. *Id.* at *2. The fraudulent concealment count alleged, in essence, that Monsanto concealed certain material facts that led the Animal and Plant Health Inspection Service's ("APHIS") to deregulate and effectively commercialize certain genetically-modified ("GE") seeds before a "complete crop system" had been established. Specifically, Monsanto purportedly omitted the "truth that there was a likelihood that farmers would illegally use [] old dicamba herbicide with their new GE soybean and cotton seeds instead of waiting for a new 'complete crop system' herbicide compatible with the new seeds," knowing all along that the "old dicamba would tend to drift onto and destroy the crops of neighboring farmers." *Id.* at *2. In holding that "the outcome of the fraudulent concealment claim necessarily depend[ed] on the interpretation and application of the federal regulatory

process under APHIS," this Court explained plaintiff's fraudulent concealment count was essentially "a collateral attack on the validity of APHIS's decision to deregulate the new seeds." *Id*. at *3. Thus, despite not formally challenging the agency's decision, which would have directly raised a federal question, this Court observed that plaintiffs could "only succeed on the [fraudulent concealment] count if they could establish that the agency decision was incorrect due to [Monsanto's] fraudulent concealment." *Id*. And resolution of that issue, this Court held, presented a substantial federal question. *Id*.

Defendant's reliance on *Bader Farms* is readily distinguishable. Again, that case involved a claim for fraudulent concealment that was dependent on a finding that the agency decision to deregulate was incorrect. Such a claim is missing from the complaint here. Instead, plaintiff's state-law failure-to-warn claim does not purport to assert a right under a federal statue or assert that defendants violated any federal statute or regulation. Nor is the claim facially dependent on the interpretation and application of the federal regulatory process under APHIS or any other federal agency responsible for regulating the use of GE products. And although plaintiff alleges defendants deceived the EPA during the GE review process, that allegation is not an element of plaintiff's cause of action nor a necessary part of his case-in-chief. Instead, plaintiff explains that allegation was made simply in anticipation of a defense that defendants have no liability because they complied with federal regulations. In that regard, and as has long been held, "a case may not be removed to federal court on the basis of a federal defense." *Markham v. Wertin*, 861 F.3d 748, 754 (8th Cir. 2017) (quoting *Caterpillar Inc. v. Williams*, 482 U.S. 386, 393 (1987).

In sum, defendants have not persuaded this Court that federal question jurisdiction exists, here, merely because plaintiff's failure-to-warn claim may—at some point in the future—touch upon federal law. Defendants' burden is, thus, left unsatisfied. *See Central Iowa Power Co–op,* 561 F.3d at 912.

## B. Whether this Court Possesses Diversity Jurisdiction

Diversity jurisdiction has also been raised as a basis for removal. Maury Farmers is a non-diverse party-defendant in this action. Thus, in seeking removal, defendants say Maury Farmers was fraudulent joined.

Defendants' primary argument is that plaintiff fails to "include any allegations of misconduct by [Maury Farmers]," suggesting "[t]he only specific factual allegation included in the complaint relates to [Maury Farmers'] applications of dicamba[.]" To the contrary, in Count I for negligence, plaintiff asserts

> If the Corporate Defendants' representations that dicamba can be sprayed safely if sprayed according to the directions are correct, then [Maury Farmers] breached its duty to Plaintiff when it sprayed dicamba herbicide in such a manner that the dicamba drifted to Plaintiff's farm and damaged Plaintiff's crops.

(ECF 1-2, ¶ 159). To be sure, Tennessee law permits negligence claims against crop spraying companies due to their negligent application. *See, e.g*., *Burton v. Warren Farmers Co-op*., 129 S.W.3d 513 (Tenn App. 2002); *Greer v. Lawhon*, 600 S.W.2d 742 (Tenn. App. 1980). Plaintiff says "[a]n investigation revealed that the damage [done to his property] was due to the application of a product containing dicamba to the fields of [his] neighbor[.]" (ECF 1-2, ¶ 140). Thus, the question is likely to turn on whether Maury Farmers sprayed dicamba on his neighbor's fields and, if so, whether it "us[ed] the wrong

concentration of herbicides, [] contaminat[ed] the herbicides with the residue of harmful chemicals used on another application, [] spray[ed] at the wrong time, or [] spray[ed] in the wrong way." *Burton*, 129 S.W.3d at 528. State law "*might* impose liability" on any of those grounds and that is enough for this Court to conclude "there is no fraudulent joinder." *Filla v. Norfolk Southern Ry. Co*., 336 F.3d 806, 810 (8th Cir. 2003) (emphasis in original).

## IV. CONCLUSION

Because defendants have failed to carry their burden of showing federal subject-matter jurisdiction in this case, *Central Iowa Power Co–op*., 561 F.3d at 912, it will be remanded back to the state court for further proceedings.

Accordingly,

**IT IS HEREBY ORDERED** that plaintiff's motion to remand (#19) is **GRANTED**. This action is hereby **REMANDED** back to the Circuit Court of Maury County, Tennessee, for further proceedings. An order of remand to follow.

So ordered this 16th day of October 2019.

_____
STEPHEN N. LIMBAUGH, JR.
UNITED STATES DISTRICT JUDGE