**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | | |
|---|---|---|
| IN RE: DICAMBA HERBICIDES LITIGATION | )<br>)<br>)<br>) | Master Case No. 1:18-md-2820 SNLJ<br><br>MDL Docket No. 2820 |

*This Document Relates to All Cases*

**DEFENDANTS' JOINT OPPOSITION TO PLAINTIFFS' MOTION FOR LEAVE TO FILE FIRST AMENDED CROP DAMAGE CLASS ACTION MASTER COMPLAINT**[1]

[1] This brief is formatted in 13-point font per the Court's preference. When formatted using 12-point font for body text and 10-point font for footnotes, it is within the 23-page limit approved by the Court. (Dkt. 516).

# TABLE OF CONTENTS


BACKGROUND ........ 1

LEGAL STANDARD ........ 5

ARGUMENT ........ 6

I. Plaintiffs' motion to amend is an untimely, prejudicial, bad-faith attempt to seek reconsideration of the Court's dismissal of Plaintiffs' claims ........ 6

A. Plaintiffs' delay in filing their post-dismissal motion to amend is inexcusable and prejudicial ........ 7

B. Justice does not require allowing Plaintiffs a fourth attempt to plead viable claims ........ 11

C. Plaintiffs do not meet the steep standard for granting reconsideration ........ 12

II. The Court should deny Plaintiffs' motion to amend because the amendments are futile ........ 13

A. Plaintiffs' attempt to resurrect their nationwide Lanham Act claim is futile, because *Bristol-Myers* bars exercising personal jurisdiction over BASF Corporation for out-of-state claims ........ 13

B. Plaintiffs cannot revive their dismissed trespass claims ........ 19

C. Plaintiffs' attempt to resurrect other already-dismissed claims is futile ........ 21

D. Plaintiffs' request to bring new causes of action for aiding-and-abetting conspiracy should be denied ........ 23

CONCLUSION ........ 28

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Am. Transp. Grp., LLC v. Power*,
2018 WL 1993204 (N.D. Ill. Apr. 27, 2018) ....27

*Bader Farms, Inc. v. Monsanto Co.*,
2019 WL 3017425 (E.D. Mo. July 10, 2019) ....10, 24, 27

*Bass Buster, Inc. v. Gapen Mfg. Co.*,
420 F. Supp. 144 (W.D. Mo. 1976) ....25

*Benton v. Merrill Lynch & Co., Inc.*,
2007 WL 1232165 (E.D. Ark. Apr. 26, 2007) ....24

*BeRousee v. Janssen Res. & Dev., LLC*,
2017 WL 4255075 (S.D. Ill. Sept. 26, 2017) ....18

*Bristol-Myers Squibb Co. v. Superior Court of California*,
137 S. Ct. 1773 (2017) .... *passim*

*Carney v. Guerbet, LLC*,
2018 WL 6524003 (E.D. Mo. Dec. 12, 2018) ....17

*Champion Parts, Inc. v. Oppenheimer & Co.*,
878 F.2d 1003 (7th Cir. 1989) ....25

*In re Charter Comm'cns Secs. Litig.*,
2004 WL 3826760 (E.D. Mo. Dec. 20, 2004) ....13

*City of Bloomington, Ind. v. Westinghouse Elec. Corp.*,
891 F.2d (7th Cir. 1989) ....19

*City of Manchester v. Nat'l Gypsum Co.*,
637 F. Supp. 646 (D.R.I. 1986) ....19

*City of St. Louis v. Am. Tobacco Co.*,
2003 WL 23277277 (Mo. Cir. Ct. Dec. 16, 2003) ....16

*Coachtrans, Inc. v. Uber Techs., Inc.*,
2016 WL 4417261 (E.D. Pa. Aug. 19, 2016) ....25

*Covington v. Janssen Pharm., Inc.*,
2017 WL 3433611 (E.D. Mo. Aug. 10, 2017) ....15, 17

*Crozier v. Wint*,
736 F.3d 1134 (8th Cir. 2013) ....................26, 28

*In re Dental Supplies Antitrust Litig.*,
2017 WL 4217115 (E.D.N.Y. Sept. 20, 2017) ....................16

*In re Dicamba Herbicides Litig.*,
359 F. Supp. 3d 711 (E.D. Mo. 2019)....................25, 26

*Dine v. Western Exterminating Co.*,
1988 WL 25511 (D.D.C. Mar. 9, 1988)....................19

*Doctor's Data, Inc. v. Barrett*,
170 F. Supp. 3d 1087 (N.D. Ill. 2016) ....................26

*Dyson v. Bayer Corp.*,
2018 WL 534375 (E.D. Mo. Jan. 24, 2018) ....................17, 18

*Empire Indus. Inc. v. Winslyn Indus., LLC*,
2019 WL 2743470 (N.D. Ill. June 30, 2019) ....................26

*Granger v. Sears Roebuck & Co.*,
2006 WL 8437594 (N.D. Ala. Nov. 17, 2006) ....................9

*Green v. Skyline Highland Holdings LLC*,
2018 WL 3800240 (E.D. Ark. June 12, 2018)....................24, 25

*Hillesheim v. Myron's Cards & Gifts, Inc.*,
897 F.3d 953 (8th Cir. 2018) ....................13

*Johnson v. Filler*,
109 N.E.3d 370 (Ill. App. 2018) ....................25

*Linkepic Inc. v. Vyasil, LLC*,
370 F. Supp. 3d 906 (N.D. Ill. 2019) ....................26

*LoggerHead Tools, LLC v. Sears Holding Corp.*,
19 F. Supp. 3d 775 (N.D. Ill. 2013) ....................27

*In re Medtronic, Inc., Sprint Fidelis Leads Prod. Liab. Litig.*,
623 F.3d 1200 (8th Cir. 2010) ....................7

*In re Milk Prods. Antitrust Litig.*,
195 F.3d 430 (8th Cir. 1999) ....................9

*Mission Measurement Corp. v. Blackbaud, Inc.*,
287 F. Supp. 3d 691 (N.D. Ill. 2017) ....................27

*Mongler v. Knight*,
2017 WL 2931369 (E.D. Mo. July 10, 2017) ....................16

*Moore v. Bayer Corp.*,
2018 WL 4144795 (Aug. 29, 2018) ....................17

*Moore v. Publicis Groupe SA*,
2013 WL 4483531 (S.D.N.Y. Aug. 23, 2013) ....................9

*Moses.com Sec., Inc. v. Comprehensive Software Sys., Inc.*,
406 F.3d 1052 (8th Cir. 2005) ....................5, 6, 7

*Myers v. Casino Queen, Inc.*,
689 F.3d 904 (8th Cir. 2012) ....................15

*In re NationsMart Corp. Sec. Litig.*,
130 F.3d 309 (8th Cir. 1997) ....................5, 7

*Parks Hiway Enters., LLC v. CEM Leasing, Inc.*,
995 P.2d 657 (Alaska 2000) ....................19

*POM Wonderful LLC v. Purely Juice, Inc.*,
362 F. App'x 577 (9th Cir. 2009) ....................25

*Rahn v. Hawkins*,
464 F.3d 813 (8th Cir. 2006) ....................6

*Rush v. Savchuk*,
444 U.S. 320 (1980) ....................16

*Sanke v. Bechina*,
576 N.E.2d 1212 (Ill. App. Ct. 1991) ....................25

*Sherman v. Winco Fireworks, Inc.*,
532 F.3d 709 (8th Cir. 2008) ....................5

*Shukh v. Seagate Tech., LLC*,
873 F. Supp. 2d 1087 (D. Minn. 2012) ....................12

*In re Syngenta AG MIR 162 Corn Litig.*,
131 F. Supp. 3d 1177(D. Kan. 2015) ....................19

*Thermodyne Food Serv. Prods., Inc. v. McDonald's Corp.*,
940 F. Supp. 1300 (N.D. Ill. 1996) ....................27

*Town of Hookset Sch. Dist. v. W.R. Grace & Co.*,
617 F. Supp. 126,133 (D.N.H. 1984) ....................20

*In re UBS AG ERISA Litig.*,
2012 WL 1034445 (S.D.N.Y. Mar. 23, 2012), *aff'd in part, vacated in part sub nom. Taveras v. UBS AG on* ....11, 12

*Vector Prod., Inc. v. Hartford Fire Ins. Co.*,
397 F.3d 1316 (11th Cir. 2005) ....25

*Walden v. Fiore*,
134 S. Ct. 1115 (2014) ....17

*In re Zofran (Ondansetron) Prods. Liab. Litig.*,
2018 WL 2291316 (D. Mass. May 18, 2018) ....7, 8, 10

**Statutes**

Mo. Rev. Stat. § 506.500.1 ....15

**Other Authorities**

Fed. R. Civ. P. 9 ....7

Fed. R. Civ. P. 12 ....13

Fed. R. Civ. P. 15 ....3, 5. 7

Fed. R. Civ. P. 16 ....5

Fed. R. Civ. P. 23 ....9

Fed. R. Civ. P. 41 ....4

Fed. R. Civ. P. 60 ....7, 12

Restatement (Second) of Torts § 876....25

Twenty-nine months after the MDL class action lawsuit was filed, twenty-one months after the creation of the MDL, fifteen months after the filing of the Crop Damage Master Complaint ("CDC"), after months of discovery and the production of millions of pages of documents, after having made a test run of several of their "new" arguments in related cases, and on the eve of class certification briefing, Plaintiffs now want a "do over." Despite their repeated assurances that the CDC would "crystallize" their allegations and put their "best foot forward," Plaintiffs, via their Motion to Amend, now ask the Court to reconsider its February 6, 2019 Order dismissing claims and allow them to (1) reassert dismissed claims; (2) make another attempt to establish personal jurisdiction over BASF Corporation for nationwide Lanham Act claims; and (3) bring new aiding-and-abetting conspiracy claims under the laws of the various states at issue. Plaintiffs' Motion to Amend and Plaintiffs' Proposed Amended Crop Damage Master Complaint ("Proposed Amended CDC") are untimely, prejudicial, made in bad faith, and futile. Thus, this Court should deny it.

## BACKGROUND

This MDL was created on February 2, 2018 to consolidate nine then-pending actions. (Dkt. 1). Of those nine pending actions, six brought claims on behalf of a putative class: *Bruce Farms*, *Whitehead*, *Warren*, *Claassen*, *Landers*, and *Smokey Alley*. *See* Ex. A: Complaints.[2]

---

[2] Dkt. 1, Complaint - Class Action, *Bruce Farms v. Monsanto Co.*, Case No. 3:17-cv-154-DPM (E.D. Ark. June 14, 2017); Class Action Complaint, *Whitehead v. Monsanto Co.*, Case No. CV-2017-40-2 (Circuit Court of Woodruff County, Ark. July 31, 2017); Dkt. 1, Complaint, *Warren v. Monsanto Co.*, Case No. 3:17-cv-973 (S.D. Ill. Sept. 11,

Defendants filed motions to dismiss in all six of those putative class actions before they were transferred to this MDL. *See* Ex. B: Motions to Dismiss.[3] In response to those motions to dismiss, Plaintiffs filed amended complaints in four of those six cases.[4] *See* Ex. C: Amended Complaints.[5] Defendants filed motions to dismiss two of those amended complaints before Plaintiffs requested transfer of the cases to this MDL. *See* Ex. B (motions to dismiss filed in *Bruce Farms* on October 27 and 30, 2017 and in *Landers* on March 8 and December 4, 2017); Ex. D: Dkt. 43, Conditional Transfer Order, *Bruce Farms v. Monsanto Co.*, Case No. 3:17-cv-154-DPM (E.D. Ark. Feb. 2, 2018); Ex. E:

2017); Dkt. 1, Complaint - Class Action, *Claassen v. Monsanto Co.*, Case No. 6:17-cv-01210 (D. Kan. Aug. 18, 2017); Dkt. 1, Class Action Complaint, *Landers v. Monsanto Co.*, Case No. 1:17-cv-00020-SNLJ (E.D. Mo. Jan. 26, 2017); Dkt. 1, Class Action Complaint and Demand for Jury Trial, *Smokey Alley v. Monsanto Co.*, Case No. 4:17-cv-02031-JMB (E.D. Mo. July 19, 2017).

[3] Dkts. 20, 23, *Bruce Farms v. Monsanto Co.*, Case No. 3:17-cv-154-DPM (E.D. Ark. Oct. 27, 30, 2017); Dkts. 21, 23, *Whitehead v. Monsanto Co.*, Case No. 2:17-cv-00168-DPM (E.D. Ark. Oct. 30, Nov. 7, 2017); Dkts. 42, 44, *Warren v. Monsanto Co.*, Case No. 3:17-cv-973 (S.D. Ill. Dec. 1, 2017); Dkts. 28, 32, *Claassen v. Monsanto Co.*, Case No. 17-cv-1210-JTM-JPO (D. Kan. Dec. 4, 5, 2017); Dkts. 8, 51, *Landers v. Monsanto Co.*, Case No. 1:17-cv-00020-SNLJ (E.D. Mo. Mar. 8, Dec. 4, 2017); Dkts. 72, 76, *Smokey Alley v. Monsanto Co.*, Case No. 4:17-cv-02031-JMB (E.D. Mo. Dec. 19, 2017).

[4] In addition, individual actions *Bader* and *Harris* had also already been amended at least once before transfer to this MDL. *See* Dkt. 77, *Bader v. Monsanto Co.* Case No. 1:16-cv-002990SNLJ (E.D. Mo. Oct. 20, 2017); Dkt. 3, *Harris v. Monsanto Co.*, Case No. 3:17-cv-5262 (W.D. Mo. Jan. 10, 2018).

[5] Dkt. 2, *Bruce Farms v. Monsanto Co.*, Case No. 3:17-cv-154-DPM (E.D. Ark. July 31, 2017); Dkt. 56, *Warren v. Monsanto Co.*, Case No. 3:17-cv-973 (S.D. Ill. Jan. 15, 2018); Dkt. 31, *Landers v. Monsanto Co.*, Case No. 1:17-cv-00020-SNLJ (E.D. Mo. Oct. 12, 2017); Dkt. 52, *Smokey Alley v. Monsanto Co.*, Case No. 4:17-cv-02031-JMB (E.D. Mo. Nov. 3, 2017).

Dkt. 59, Conditional Transfer Order, *Landers v. Monsanto Co.*, Case No. 1:17-cv-00020-SNLJ (E.D. Mo. Feb. 1, 2018).

Upon creation of this MDL, Plaintiffs requested that the Court allow them to file a consolidated amended Master Complaint to combine all the crop damage claims and putative classes into one pleading that would govern the litigation going forward. (*See* Dkt. 30, Downing Group's Brief Regarding Use of Master Complaints (Apr. 11, 2018)). Plaintiffs argued that Rule 15(a) authorized a Master Complaint, (Dkt. 30 at 3, 6), stating "the consolidated complaint that we're proposing is just an amendment of the complaint of the named parties." (Ex. F, *Transcript of April 11, 2018 Hearing* at 16:7-8). Plaintiffs urged the Court *not to rule* on the existing motions to dismiss the underlying complaints (most of which had already been amended once) and instead allow an amended Master Complaint, because the Master Complaint would "allow the Plaintiffs to put [their] best foot forward with the claims [Plaintiffs] think … are going to be addressed." (*Id.* at 19:8-9; *see also id.* at 34:18-35:7). Plaintiffs represented that the Master Complaint would create efficiency by allowing Plaintiffs "an opportunity to crystallize the allegations, crystallize the claims that are going to be pursued" and present "the strongest arguments [they] can make." (*Id.* at 16:23-25, 22:19).

The Court allowed Plaintiffs to file a substantive consolidated master crop damage complaint and declined to rule on the existing fully-briefed motions to dismiss the underlying amended complaints because "plaintiffs will put their best pleading foot forward under the substantive-consolidated-master-complaint approach." (Dkt. 46).

Plaintiffs filed their Crop Damage Master Complaint on August 1, 2018, (Dkt. 137), and Defendants filed motions to dismiss on August 31, 2018. (Dkts. 146, 147).

The Court ruled on Defendants' motions to dismiss on February 6, 2019—over nine months ago. (Dkt. 302). The Court dismissed the nationwide Lanham Act claims against BASF Corporation for lack of specific personal jurisdiction as to the non-Missouri class members' claims. (Dkt. 302 at 11-14, 53). The Court also dismissed Plaintiffs' claims for strict liability - ultrahazardous activity; trespass; nuisance; breach of implied warranty under Arkansas, Kansas, South Dakota, and Tennessee law; breach of express warranty under Kansas law; and violation of the Nebraska Consumer Protection Act. (*Id.* at 53-54). Lastly, the Court dismissed Plaintiffs' failure to warn claims to the extent they exceed the parameters of FIFRA and dismissed their negligent training claims to the extent they do not relate to the training of Defendants' employees or agents. (*Id.* at 53). The Court's order did not specify whether the dismissal was with or without prejudice, so it is considered "an adjudication on the merits." Fed. R. Civ. P. 41(b).

Despite receiving notice of the deficiencies in their claims as early as 2017 from Defendants' initial motions to dismiss, **again** in August 2018 by Defendants' motions to dismiss the Master Complaint, **and again** in February 2019 by the Court's decision partially granting Defendants' motions to dismiss, Plaintiffs waited until October 17, 2019—nearly nine months after the Court's order—to request leave to file another amended complaint. (Dkt. 509). Plaintiffs seek to resurrect their dismissed nationwide Lanham Act claims against BASF Corporation and their trespass claim against both Defendants. (Dkt. 509 at 2). They also seek to add a claim for aiding & abetting

conspiracy. (*Id.* at 4). In addition, Plaintiffs' Proposed Amended CDC does not remove any of the previously dismissed claims; thus, it appears Plaintiffs are attempting to revive *all* the claims this Court dismissed in its February 6, 2019 Order.

## LEGAL STANDARD

Because more than 21 days have passed since Defendants filed motions to dismiss the Master Complaint, Plaintiffs can amend only with Defendants' consent or the Court's leave. Fed. R. Civ. P. 15(a)(1)-(2). A district court may deny leave to amend for reasons such as undue delay, bad faith, dilatory motive, repeated failure to cure deficiencies by previous amendments, undue prejudice to the non-moving party, or futility of the amendment. *Moses.com Sec., Inc. v. Comprehensive Software Sys., Inc.*, 406 F.3d 1052, 1065 (8th Cir. 2005). While Rule 15(a) typically grants leave to amend liberally, "different considerations apply when a party seeks to amend the pleadings *after* the district court dismisses the complaint." *In re NationsMart Corp. Sec. Litig.*, 130 F.3d 309, 322 (8th Cir. 1997). "Unexcused delay is sufficient to justify the denial of a motion to amend the complaint if the party is seeking to amend the pleadings after the district court has dismissed the claims it seeks to amend …." *Moses.com*, 406 F.3d at 1065.

When a proposed amendment would require modification of a scheduling order, courts apply the more stringent "good cause" standard in Rule 16(b). *See* Fed. R. Civ. P. 16(b)(4) ("A schedule may be modified only for good cause and with the judge's consent."); *Sherman v. Winco Fireworks, Inc.*, 532 F.3d 709, 716 (8th Cir. 2008). The "good cause" analysis under Rule 16(b) is "more narrow" than the Rule 15(a) inquiry. *Id.*

"The primary measure of good cause is the movant's diligence in attempting to meet the order's requirements." *Rahn v. Hawkins*, 464 F.3d 813, 822 (8th Cir. 2006).

## ARGUMENT

### I. Plaintiffs' motion to amend is an untimely, prejudicial, bad-faith attempt to seek reconsideration of the Court's dismissal of Plaintiffs' claims.

The Court should deny Plaintiffs' request to relitigate claims that were dismissed over nine months ago. Plaintiffs' "motion to amend" is essentially a motion for reconsideration of the Court's decision dismissing the nationwide Lanham Act claims, trespass claims, and other claims. When a "party is seeking to amend the pleadings after the district court has dismissed the claims it seeks to amend," unexcused delay alone can justify denying amendment. *Moses.com*, 406 F.3d at 1065.

Plaintiffs' nine-month delay is inexcusable. Plaintiffs cannot claim that they needed to conduct discovery to amend their complaint. BASF Corporation's document production was substantially complete as of November 2018—several months before the Court's February 6, 2019 order on the motions to dismiss—and Monsanto's was substantially complete in April 2019.[6] Plaintiffs did not need six months to ponder those documents or nine months to ponder the Court's dismissal to ask for leave to amend.

---

[6] As of November 2018, BASF Corporation had produced 1,170,649 pages of documents. By February 2019, BASF Corporation produced another 83,985 pages. Between February and September 2019, BASF Corporation produced only another 13,916 pages. As of April 30, 2019, Monsanto had produced 755,244 pages of documents. After April 30, 2019, Monsanto produced another 88,598 pages, some of which were reproductions of previously-produced documents with changes in confidentiality designations.

Because Plaintiffs are essentially seeking reconsideration of the Court's order, the steeper standard of Rule 60(b), rather than the liberal pleading standard of Rule 15(a), applies. Plaintiffs cannot meet the Rule 60(b) standard.

### A. Plaintiffs' delay in filing their post-dismissal motion to amend is inexcusable and prejudicial.

In the Eighth Circuit, "post-dismissal motions to amend are disfavored." *In re Medtronic, Inc., Sprint Fidelis Leads Prod. Liab. Litig.*, 623 F.3d 1200, 1208 (8th Cir. 2010). Multiple cases deny motions to amend that come on the heels of orders dismissing complaints in whole or in part—even with far less delay than the nine-month period here. *See, e.g.*, *id.* (denying motion for leave to file amended master complaint because Plaintiffs did not seek leave to amend before the adverse dismissal ruling); *Moses.com*, 406 F.3d at 106); *In re NationsMart*, 130 F.3d at 323-24.

*In re Zofran (Ondansetron) Prods. Liab. Litig.*, 2018 WL 2291316 (D. Mass. May 18, 2018), is instructive. In that MDL, the court dismissed claims based on allegedly fraudulent marketing for failure to comply with Rule 9(b)'s heightened pleading standards. Almost seven months later, the plaintiffs filed a motion to amend their master complaint "to effectively reinstate the advertising and marketing-based fraud claims." *Id.* at *4. The court denied the motion to amend, finding the reasserted claims untimely and plaintiffs' "practice of waiting to amend a complaint until after the Court has ruled on a motion to dismiss … troublesome." *Id.* (quotation omitted). The court noted that the plaintiffs were alerted over a year before to the potential deficiencies in their claims by the defendant's motion to dismiss, "then fully litigated defendant's partial motion to

dismiss," and "now seek leave to make an amendment that would, in effect, reverse that ruling." *Id.* at *7. Thus, the court found it best to "discourage any expectation that there will be leisurely repeated bites at the apple." *Id.* (quotation omitted).

The same reasoning applies here. Defendants' motions to dismiss, both in this case and in the underlying cases, put Plaintiffs on notice of the deficiencies in their nationwide Lanham Act claims, trespass claims, and other dismissed claims. (*See* Exs. B, D). Plaintiffs could have sought to leave to amend after seeing Defendants' August 31, 2018 motions to dismiss, but they did not. Instead, they fully litigated the motions. Once the Court dismissed many of their claims in February 2019, Plaintiffs could have sought reconsideration of the Court's dismissals. Instead, they delayed bringing their motion to amend *for nine months*, long after document production was substantially complete, after class certification expert discovery and *Daubert* briefing, after Defendants moved for summary judgment in the related individual case *Bader*, and on the eve of class certification briefing in the MDL. Plaintiffs' delay purposefully sandbagged Defendants and prejudices this Court's efficient case management. The Court should deny Plaintiffs' attempt to resurrect claims that were fully briefed multiple times and dismissed.

For those same reasons, Plaintiffs' motion to amend is highly prejudicial. Plaintiffs' motion to amend comes at an advanced stage in this litigation. Class certification expert discovery is closed. (*See* Dkt. 245 at 2). *Daubert* motions on the class experts are pending and briefing on class certification is imminent. The Court has barred any additional discovery on Master Complaint Named Plaintiffs until after the Court rules on class certification. (Dkt. 432 at 2). If the Court allows Plaintiffs' amendment,

Defendants will have no opportunity to cross-examine the Named Plaintiffs on the proposed new class-based allegations or causes of action. They also will have no opportunity to enlist class experts on the newly allowed claims or on the expanded nationwide class definition against BASF Corporation. The Court could reopen class discovery, but that would further delay the progress of this case. This is the sort of prejudice that justifies denial of a motion to amend. *In re Milk Prods. Antitrust Litig.*, 195 F.3d 430, 438 (8th Cir. 1999); *see also Moore v. Publicis Groupe SA*, 2013 WL 4483531, at *13 (S.D.N.Y. Aug. 23, 2013); *Granger v. Sears Roebuck & Co.*, 2006 WL 8437594, at *2 (N.D. Ala. Nov. 17, 2006).

Further, Rule 23 provides that "[a]t an early practicable time after a person sues or is sued as a class representative, the court must determine by order whether to certify the action as a class action." Fed. R. Civ. Pro. 23(c)(1)(a). If the Court grants Plaintiffs leave to amend for a fourth time, there will be inevitable delay in class certification briefing while the parties brief and the Court decides another round of motions to dismiss. While Courts have considerable latitude to determine what "an early practicable time" is in each putative class action, it is certainly within the Court's discretion to determine, 29 months after the filing of the first class action matter in this MDL, that additional delay is sufficient to justify the denial of Plaintiffs' motion to amend.[7]

[7] The longest running case in this MDL, *Bruce Farms*, *(see* Ex. A, filed June 14, 2017), will have been pending **896 days** at the time of this briefing. The amount of time afforded the MDL Plaintiffs to reach submission of class certification is well in excess of the average reported time. *See* THOMAS E. WILLGING, LAURAL L. HOOPER & ROBERT J. NIEMIC, AN EMPIRICAL STUDY OF CLASS ACTIONS IN FOUR FEDERAL DISTRICT COURTS, Federal Judicial Center (1996) at 27 and fig.19 ("Median times [to motions for class

Plaintiffs claim there is no unexcused delay because their amendments are supposedly based on "newly discovered" information obtained through discovery that was not completed until September 2019. (Dkt. 509 at 6-7). Plaintiffs' claim is disingenuous—BASF Corporation's document production was substantially complete in November 2018, a year ago and several months before the Court even decided the motions to dismiss, and Monsanto's document production was substantially complete in April 2019, just a couple months after the Court's order on the motions to dismiss. Moreover, the "new" allegations Plaintiffs claim support revival of their trespass claims were made as early as the *Bader Farms* Second Amended Complaint, which was filed more than two years ago and has since been amended. (*See* Dkt. 77, Second Amended Complaint, *Bader Farms, Inc. vs. Monsanto Co.*, Case No. 1:16-cv-00299-SNLJ at Count VII (Oct. 20, 2017)). Further, many of Plaintiffs' other new allegations are based on **publicly available** documents, not Defendants' internal documents obtained through discovery. (*See* Proposed Amended CDC ¶¶ 311, 320-21, 325, 411, 420, 425, 433, 435, 455, 511). Plaintiffs can articulate no reason for delaying any new allegations not based on Defendants' document production. *See Zofran*, 2018 WL 2291316, at *6-7.

---

certification] ranged from 3.1 months [93 days] to 4.3 months [129 days] after the filing of the complaint. Seventy-five percent (75th percentile) of the motions or orders were filed within a range of 6.5 months [195 days] at one end to 16.3 months [489 days] at the other."); ADMIN. OFFICE OF THE COURTS, OFFICE OF COURT RESEARCH, SECOND INTERIM REPORT FROM THE STUDY OF CALIFORNIA CIVIL CLASS ACTION LITIGATION, www.courts.ca.gov/documents/classaction-certification.pdf (2010) at 9 and FN 21 ("The median time from filing to the first motion for certification is 400 days (mean at 474 days), with 75% of all motions filed within 631 days.").

And even the new allegations that refer to Defendants' internal documents cite overwhelmingly to documents that were produced **a year ago**. (*See, e.g.*, Proposed Amended CDC ¶¶ 91-92, 113-17, 121-23, 129, 131-34, 139, 160-61, 164-68, 172, 174, 178-79, 205, 214, 218, 245, 263, 268, 318, 326, 340-41, 369, 393, 414, 426-27, 429, 437, 475, 550). Plaintiffs offer no valid justification for delaying these new allegations either.

### B. Justice does not require allowing Plaintiffs a fourth attempt to plead viable claims.

Plaintiffs' Proposed Amended CDC would not be their first opportunity to amend. As described above, Plaintiffs have filed multiple amended complaints. The current operative Crop Damage Class Action Master Complaint was actually the *second* amended complaint for many of the MDL plaintiffs, and at least the first for all the named Master Complaint plaintiffs. *Compare In re UBS AG ERISA Litig.*, 2012 WL 1034445, at *5, 6 (S.D.N.Y. Mar. 23, 2012) (denying motion to amend partly due to earlier amendments both before and since the creation of the MDL), *aff'd in part, vacated in part sub nom. Taveras v. UBS AG on other grounds*, 513 F. App'x 19 (2d Cir. 2013). The Court allowed that amendment because Plaintiffs promised the Master Complaint "would put [their] best foot forward" and present "the strongest arguments [they] can

make." Ex. F at 19:8-9, 22:19; *see also id.* at 22:19, 34:18-35:7). Despite that promise, Plaintiffs' "best foot" apparently is not yet forward.

The Court should not allow such gamesmanship. Taken collectively, this is Plaintiffs' **fourth attempt** to state viable claims over **three years** into this litigation.[8] Pleading is not "an interactive game in which the plaintiffs file a complaint, and then bat it back and forth with the Court over a rhetorical net until a viable complaint emerges." *In re UBS*, 2012 WL 1034445, at *6 (quotation omitted). "It is the plaintiffs' responsibility to plead their case adequately, and a court may deny plaintiff leave to replead when that party has—as here—been given ample prior opportunity to allege a claim." *Id.*; *see also Shukh v. Seagate Tech., LLC*, 873 F. Supp. 2d 1087, 1093 (D. Minn. 2012). Plaintiffs should not be allowed a fourth attempt at pleading.

### C. Plaintiffs do not meet the steep standard for granting reconsideration.

In reality, Plaintiffs' motion for leave to amend is a motion for reconsideration of the Court's order dismissing their Lanham Act nationwide allegations, their trespass claims, and the other already-dismissed claims. A motion for reconsideration of a non-final order is considered a motion under Rule 60(b), which requires the moving party to show one of the following: (1) the court made a manifest error of law or fact, (2) there is

[8] Bumper Crop Farms was initially named in the *Landers* amended complaint filed on October 12, 2017. *See* Ex. C. He later filed a direct complaint on July 18, 2018. *See* Ex. H: Dkt. 1, Class Action Complaint, *Bumper Crop Farms v. Monsanto*, Case No. 3:18-cv-01409-SMY-RJD (July 18, 2018). All the other Named Master Complaint Plaintiffs filed direct complaints, then amended their claims in the Master Crop Damage Complaint. Thus, all the Named Master Complaint Plaintiffs have already amended at least once, and Bumper Crop Farms has already amended twice.

newly discovered evidence, or (3) there is a significant change in facts or law. *In re Charter Comm'cns Secs. Litig.*, 2004 WL 3826760 (E.D. Mo. Dec. 20, 2004). Plaintiffs do not even try to meet this standard. At best, they might argue they have "newly discovered evidence," but, as explained above, most of their proposed new allegations have been within Plaintiffs' knowledge since November 2018 or earlier. And, even if Plaintiffs' allegations constitute newly discovered evidence, none of it supports overturning the Court's previous decisions.

Plaintiffs' delay in seeking amendment to resurrect their already-dismissed claims is inexcusable. The Court can deny their motion to amend on this basis alone. Moreover, the proposed amendments are prejudicial because class certification discovery is closed, barring Defendants from necessary discovery and expert development on the claims that Plaintiffs belatedly seek to pursue.

## II. The Court should deny Plaintiffs' motion to amend because the amendments are futile.

A court may deny leave to amend if the amendment would be futile. *Hillesheim v. Myron's Cards & Gifts, Inc.*, 897 F.3d 953, 955 (8th Cir. 2018). An amendment is futile if the amended claim could not withstand a motion to dismiss under Rule 12(b)(6). *Id.* The Court should reject Plaintiffs' attempts to revive already-dismissed claims and their attempt to bring a new cause of action for aiding-and-abetting conspiracy, because these amendments would not survive yet another motion to dismiss.

### A. Plaintiffs' attempt to resurrect their nationwide Lanham Act claim is futile, because *Bristol-Myers* bars exercising personal jurisdiction over BASF Corporation for out-of-state claims.

Plaintiffs' original Master Complaint brought a Lanham Act claim against BASF Corporation on behalf of a nationwide class. (Dkt. 137 ¶¶ 368-69, 383-97). This Court held that it had no personal jurisdiction over BASF Corporation as to the claims of non-Missouri class members because *Bristol-Myers Squibb Co. v. Superior Court of California* requires "a connection between the forum and the specific claims at issue."[9] (Dkt. 302 at 11-14). In *Bristol-Myers*, the Supreme Court held that a California court lacked specific jurisdiction over the claims of 592 non-California residents against a non-California corporation because the nonresidents were not prescribed, did not purchase or ingest, and were not injured by the defective drug in California. 137 S. Ct. 1773, 1781-82 (2017). Similarly, this Court held that "members of a nation-wide class action, aside from those class members from Missouri, do not have a connection between the forum and the specific [Lanham Act] claims at issue." (Dkt. 302 at 13-14).

Plaintiffs now seek to resuscitate their nationwide Lanham Act claims by alleging additional contacts between BASF Corporation and Missouri. Plaintiffs argue that these Missouri contacts allow the Court to exercise personal jurisdiction over BASF Corporation even as to *non-Missouri* class members' Lanham Act claims. But Plaintiffs' motion to amend fails to explain how this exercise of personal jurisdiction complies with

[9] In contrast, the Court ruled it had general personal jurisdiction over Monsanto, because Monsanto is headquartered in Missouri, and, as a result, Court can hear "any claim" against Monsanto, "even if all the incidents underlying the claim occurred in a different State." (Dkt. 302 at 11 (quoting *Bristol-Myers*, 137 S. Ct. at 1780)).

*Bristol-Myers*' requirement of "a connection between the forum and *the specific claims at issue*."[10] 137 S. Ct. at 1781 (emphasis added).

As an initial matter, Plaintiffs could have raised this argument in their 50-page opposition to BASF Corporation's motion to dismiss the Master Complaint but failed to do so. In fact, Plaintiffs actually raised ***this exact argument*** in their oppositions to BASF Corporation's *Landers* and *Smokey Alley* motions to dismiss ***nearly two years ago***. *See* Ex. G: (Dkt. 91, *Smokey Alley Plaintiffs' Opp. To BASF Motion to* Dismiss, Case No. 4:17-cv-02031-JMB at 10-14 (Jan. 29, 2018); Dkt. 56, *Landers Plaintiffs' Opp. To BASF Motion to Dismiss*, Case No. 1:17-cv-00020-SNLJ at 3-6 (Dec. 22, 2017)).

Plaintiffs claim that this Court has personal jurisdiction over BASF Corporation for the non-Missouri class members' Lanham Act claims based on: (1) BASF Corporation's agreement with Missouri-based Monsanto to develop dicamba-based weed products, (2) BASF Corporation's attendance of a few meetings in Missouri related to the development of dicamba-based weed products, (3) telephone and email communications

[10] Instead, Plaintiffs discuss Missouri's long-arm statute and cite an irrelevant Eighth Circuit case. (Dkt. 509 at 9). While it is not necessary to consider application of Missouri's long-arm statute here, because the Due Process Clause does not permit the exercise of personal jurisdiction in any event, *see Covington v. Janssen Pharm., Inc.*, 2017 WL 3433611, at *4 (E.D. Mo. Aug. 10, 2017), even Missouri's long-arm statute would not permit personal jurisdiction because the non-Missouri class members' Lanham Act claims do not "arise" from any of BASF Corporation's activities in Missouri. Mo. Rev. Stat. § 506.500.1. As for *Myers v. Casino Queen, Inc.*, 689 F.3d 904 (8th Cir. 2012), the court there found personal jurisdiction over an Illinois defendant in Missouri for claims brought by a *Missouri plaintiff* who visited the defendant's Illinois casino just across the border due to the defendant's advertising *in Missouri*. 689 F.3d at 907-08. *Myers* did not address whether a state has personal jurisdiction over a non-resident defendant for claims brought by *non-resident plaintiffs*.

with Monsanto, and (4) testing of the dicamba-based weed products in Missouri.[11] (*See* Proposed Amended CDC ¶¶ 43-44, 95, 120-21, 131, 169, 183). None of these alleged Missouri contacts establish specific jurisdiction.

First, BASF Corporation's contacts with Missouri-based Monsanto are not a sufficient basis to exercise specific jurisdiction over BASF Corporation. Missouri does not recognize "conspiracy jurisdiction," so Plaintiffs cannot premise personal jurisdiction over BASF Corporation purely on the alleged conspiracy with Missouri-based Monsanto. *See Mongler v. Knight*, 2017 WL 2931369, at *6 (E.D. Mo. July 10, 2017); *City of St. Louis v. Am. Tobacco Co.*, 2003 WL 23277277, at *6-7 & n.10 (Mo. Cir. Ct. Dec. 16, 2003) (citation omitted). Many other courts have also rejected "conspiracy jurisdiction" as inconsistent with due process. *See, e.g.*, *In re Dental Supplies Antitrust Litig.*, 2017 WL 4217115, at *7 (E.D.N.Y. Sept. 20, 2017). There is good reason for rejecting the theory—Supreme Court precedent is clear that "the requirements of *International Shoe* … must be met as to each defendant," *Rush v. Savchuk*, 444 U.S. 320, 332 (1980), and "a defendant's relationship with a … third party, standing alone, is an insufficient basis for

[11] Plaintiffs' insinuations that BASF Corporation and Monsanto jointly developed and marketed the DT system are baseless and inaccurate. BASF Corporation and Monsanto developed their own products, conducted their own testing, and independently promoted their own products. There is no evidence that BASF Corporation and Monsanto engaged in co-promotion or co-sale of the products used in the DT System, and, in fact, deposition testimony from both BASF Corporation and Monsanto employees confirms no such co-promotion or co-sale occurred. (*See* Dkt. 219, BASF Corporation's Memorandum in Support of Its Motion for Summary Judgment, *Bader v. Monsanto Co.*, Case No. 1:16-cv-00299-SNLJ (Sept. 18, 2019)).

jurisdiction." *Walden v. Fiore*, 134 S. Ct. 1115, 11123 (2014). This is true even when the relationship relates to the product at issue. *Bristol-Myers*, at 1784.

Plaintiffs must meet the requirements of personal jurisdiction over BASF Corporation *separately* from Monsanto. Plaintiffs appear to contend there is personal jurisdiction because BASF Corporation allegedly developed a "marketing strategy" for the dicamba-based system with Monsanto in Missouri and conducted product testing in Missouri. That argument fails under *Bristol-Myers*, this Court's decision in *Dyson v. Bayer Corp.*, 2018 WL 534375 (E.D. Mo. Jan. 24, 2018), and many other cases from this district. "Allegations that a non-resident … company researches, designs, tests, formulates, inspects, markets, or promotes a [product] within the forum state are not enough to establish specific personal jurisdiction" for claims by a non-resident plaintiff. *Carney v. Guerbet, LLC,* 2018 WL 6524003, at *4 (E.D. Mo. Dec. 12, 2018).

*Dyson* is particularly instructive. In that case, non-Missouri plaintiffs attempted to establish personal jurisdiction over a non-Missouri defendant by alleging the defendant developed a marketing strategy, created labeling, conducted pre-market clinical trials, and obtained FDA approval of the allegedly defective device in Missouri. *Id.* at *2. This Court rejected that argument, because "even assuming that discovery would prove exactly what plaintiffs contend happened in Missouri with respect to … marketing and clinical trials, the individual plaintiffs' claims are too attenuated from those activities to prove specific, 'case-linked' personal jurisdiction." *Id.* at *4. Other courts in this district have reached similar conclusions. *See Carney,* 2018 WL 6524003, at *4; *Moore v. Bayer Corp.*, 2018 WL 4144795, at *3-5 (Aug. 29, 2018); *Covington v. Janssen Pharms., Inc.*,

2017 WL 3433611, at *4-5 (E.D. Mo. Aug. 10, 2017); *BeRousee v. Janssen Res. & Dev., LLC*, 2017 WL 4255075, at *4 (S.D. Ill. Sept. 26, 2017).

The same is true here. Even if BASF Corporation did develop a "marketing strategy" for the dicamba-based system in Missouri (which it did not), that would not establish an "adequate link" between Missouri and the non-Missouri class members' Lanham Act claims. *Bristol-Myers*, 137 S. Ct. at 1781. Plaintiffs do not allege that: (1) the non-Missouri class members' neighbors viewed advertising in Missouri that led them to apply dicamba herbicides; (2) BASF Corporation made any false statements in Missouri that led non-Missouri class members' neighbors to apply dicamba herbicides; or (3) the non-Missouri class members were harmed by any dicamba herbicides in Missouri. (*See* Proposed Amended CDC ¶¶ 624, 629); *compare Dyson*, 2018 WL 534375, at *4. Similarly, BASF Corporation's limited product testing in Missouri does not provide the necessary "connection between the forum and the specific claims at issue"—i.e., false advertising Lanham Act claims. *Bristol-Myers*, 137 S. Ct. at 1781. Plaintiffs do not allege the non-Missouri class members' neighbors reviewed or relied on that Missouri testing in deciding to apply dicamba herbicides. (*See* Proposed Amended CDC ¶¶ 183, 628); *compare Dyson*, 2018 WL 534375, at *5. In sum, Plaintiffs offer no allegations that adequately connect BASF Corporation's alleged activities in Missouri to non-Missouri class members' alleged injuries.

Plaintiffs' allegations attempting to establish personal jurisdiction over BASF Corporation for non-resident class members' Lanham Act claims are futile. The Court should therefore deny Plaintiffs' motion to amend to add these allegations.

### B. Plaintiffs cannot revive their dismissed trespass claims.

Similarly, Plaintiffs' attempt to revive their dismissed trespass claims is futile. Approximately nine months ago, this Court dismissed Plaintiffs' trespass claims for failure to state a claim because "'courts do not impose trespass liability on sellers for injuries caused by their product after it has left the ownership and possession of the sellers.'" (Dkt. 302 at 20-23 (quoting *City of Bloomington, Ind. v. Westinghouse Elec. Corp*., 891 F.2d at 611, 615 (7th Cir. 1989))). "This is because sellers no longer exert control over the product," (Dkt. 302 at 21), and "plaintiffs do not cite to any cases in which a manufacturer was held liable for its product's trespass after being sold to a buyer." (Dkt. 302 at 22).

Despite this Court's prior ruling, Plaintiffs now seek to reassert their dismissed trespass claims based on "new" allegations regarding the Monsanto Technology Stewardship Agreement ("MTSA") that Monsanto enters into with the purchasers of Xtend seeds. (*See, e.g.*, Proposed Amended CDC ¶¶ 318-61, 787-90).

Plaintiffs' request to add the "new" MTSA-related allegations should be denied because they cannot revive Plaintiffs' dismissed trespass claims and, thus, their addition would be futile. As this Court previously observed, courts have uniformly held that product manufacturers are not liable for post-sale trespass of their products. *See, e.g.*, *City of Bloomington,* 891 F.2d at 615; *In re Syngenta AG MIR 162 Corn Litig*., 131 F. Supp. 3d 1177, 1209-211(D. Kan. 2015); *Parks Hiway Enters., LLC v. CEM Leasing, Inc*., 995 P.2d 657, 665 (Alaska 2000); *Dine v. Western Exterminating Co*., 1988 WL 25511, at *9 (D.D.C. Mar. 9, 1988); *City of Manchester v. Nat'l Gypsum Co*., 637 F. Supp. 646, 656

(D.R.I. 1986); *Town of Hookset Sch. Dist. v. W.R. Grace & Co.*, 617 F. Supp. 126,133 (D.N.H. 1984). To state a claim for trespass, the defendant must have had ownership or control of the intruding instrumentality at the time of the intrusion. *Id.*

Here, Plaintiffs' proposed amendments do not allege the required ownership or control. First, the proposed MTSA-related amendments do not even attempt to allege that Monsanto ever had ownership or control of *the intruding instrumentality itself*—*i.e.*, the dicamba herbicide alleged to have trespassed onto Plaintiffs' crops. Instead, Plaintiffs attempt to revive their dismissed trespass claims based on allegations that the MTSA includes contractual provisions relating to the use of Xtend seeds—a different product.

Second, the contractual provision Plaintiffs cite falls far short of an allegation that Monsanto retained post-sale ownership or control even of Xtend seeds (much less the intruding product). The Court previously held the MTSA does not grant Monsanto the necessary control in dismissing Plaintiffs' nuisance claim. (Dkt. 302 at 26). Plaintiffs' allege only that the MTSA contractually obligates purchasers of Xtend seeds to avoid making unapproved applications of dicamba herbicide to crops grown from Xtend seeds. (*See* Proposed Amended CDC at ¶¶ 325-26).[12] But Plaintiffs do not allege that the

[12] The 2017 MTSA requires growers to "strictly follow the applicable requirements of this Agreement, [and] the Technology Use Guide ("TUG")," and then states: "Grower acknowledges that compliance with the foregoing stewardship requirements is a fundamental term of this Agreement, and Grower may lose its limited use license to use these products if Grower fails to comply with this Agreement." Ex. I: MON 0002436/2438 (2017 MTSA) at 2436 ¶ 1.b. The TUG contractually obligates the grower to use only approved herbicides in conjunction with the seed. Ex. J: MON0007677/7720 at 7679. The MTSA also states that the grower agrees "[t]o use on crops containing Monsanto Technology only pesticides labeled for such use." Ex. I at 2436 ¶ 1.i.

contractual provision prevents Xtend seed purchasers from taking post-sale possession of the Xtend seeds they purchased. And Plaintiffs do not allege that the MTSA grants Monsanto post-sale control of the seeds necessary to prevent their use with unapproved herbicides (in breach of the MTSA). Purchasers can breach the MTSA. While the MTSA is intended to **deter** purchasers from making unlawful pesticide applications to Xtend seeds, it does not **control** purchasers' post-sale use of the seed. In fact, Plaintiffs themselves allege that post-sale misuse of herbicides with Xtend seeds occurred **despite this contractual provision.**[13]

Plaintiffs also seek to add allegations that Monsanto can terminate the license of a grower found to have improperly used dicamba with Xtend seeds. (*See* Proposed Amended CDC at ¶ 333). But those allegations are similarly incapable of reviving Plaintiffs' trespass claims: the ability to terminate a grower's license for misuse of the seed **after such misuse has occurred** does not establish that Monsanto had post-sale control over the seed at the time of the alleged misuse. In sum, the allegations that Plaintiffs offer to revive their trespass claim are not new, and, even if they were, they are an insufficient basis upon which to predicate a claim for trespass. The trespass claims in Plaintiffs' Proposed Amended CDC are futile.

**C. Plaintiffs' attempt to resurrect other already-dismissed claims is futile.**

[13] If the contractual provision actually granted Monsanto the necessary control (which it does not), it would have **prevented** the very use of dicamba herbicide with Xtend seeds of which Plaintiffs complain.

In Plaintiffs' Motion to Amend, they specifically state their proposed amendments are to address rulings related to: "(1) Lanham Act claims against BASF on jurisdictional grounds; (2) trespass; (3) failure to warn based on labels/FIFRA; and (4) conspiracy." (Dkt. 509 at 2). However, in the Proposed Amended CDC, Plaintiffs did not remove the other claims that this Court dismissed in its February 16, 2019 ruling, which include Plaintiffs' strict liability - ultrahazardous activity claims, nuisance claims, Nebraska Consumer Protection Act claim, Kansas breach of warranty claims, and Arizona, South Dakota, and Tennessee breach of implied warranty claims. Because Plaintiffs did not remove these claims from the Proposed Amended CDC, it appears that they are attempting to revive them.

However, Plaintiffs' proposed amendments cannot overcome the fatal flaws that this Court has already identified with respect to these claims:

- This Court dismissed Plaintiffs' strict liability - ultrahazardous activity claims, finding Plaintiffs' theory "untenable" because no court has ever extended the "ultrahazardous activity doctrine to a claim that the manufacture, marketing, and sale of a product can be an ultrahazardous activity, as opposed to the actual use of the product itself." (Dkt. 302 at 19). The strict liability - ultrahazardous activity counts in the Proposed Amended CDC are premised on the exact same faulty theory and Plaintiffs have not cited any case where any court extended this type of liability to a product manufacturer. To the extent Plaintiffs seek to revive this claim, that effort is futile.

- This Court dismissed Plaintiffs' claims for nuisance under Illinois, Kansas, Nebraska, Mississippi, and South Dakota law because "product manufacturers are not liable for nuisance caused by post-sale use of their products." (Dkt. 302 at 24). Plaintiffs' Proposed Amended CDC contains additional allegations insinuating that Monsanto's license agreements provide the required post-sale control of their products; however, this Court has already rejected the argument that nuisance claims can be predicated on license agreements. (Dkt. 302 at 26 ("[T]he license agreements alleged in this case do not suffice to give defendants any such control.")). The fact that Plaintiffs allege additional details regarding the license agreements in the Proposed Amended CDC does not alter this analysis and is not sufficient to resurrect those counts.

- This Court dismissed Plaintiffs' Nebraska Consumer Protection Act claim because of the statute's safe harbor provision, which exempts claims based on actions regulated by federal agencies. (Dkt. 509 at 42). In the Proposed Amended CDC, Plaintiffs' Nebraska Consumer Protection Act is pled identically to the dismissed claim (*see* Proposed Amended CDC ¶¶ 1693-1700); accordingly, the claim still "undoubtedly relate[s] to advertising, which is regulated by the EPA under FIFRA." (Dkt. 509 at 42). This claim is still futile, and this Court should not allow it.

- This Court dismissed Plaintiffs' negligent training claims "to the extent they claim defendants failed to train non-employee/agents" because there is no "'assumed' duty to train a non-employee/agent." (Dkt. 302 at 46). Yet, Plaintiffs' Proposed Amended CDC still asserts negligent training claims with respect "to users of the Xtend Crop System." (Proposed Amended CDC ¶ 1849). Plaintiffs have cited no caselaw (or any other authority) that would provide the Court with a basis to reconsider its previous stance.

- This Court dismissed Plaintiffs' Kansas breach of warranties claims specifically "[b]ecause Kansas law does not recognize breach of warranty claims by a third party unless 'personal injury' is involved." (Dkt. 302 at 47). Nowhere in Plaintiffs' Proposed Amended CDC do they allege that (1) any Kansas Plaintiff purchased or used any of Defendants' products (meaning, the Kansas Plaintiffs are all "third parties" for the purposes of Kansas warranty law analysis); or (2) that any of the Kansas Plaintiffs suffered personal injury. Thus, any effort to revive Plaintiffs' Kansas warranty law claims is futile.

- This Court dismissed Plaintiffs' breach of implied warranty claims under Arkansas, South Dakota, and Tennessee law because those claims were, as a matter of law, effectively disclaimed by Defendants' product labels and because the Magnuson-Moss Warranty Act does not apply to the products at issue in this lawsuit. (Dkt. 302 at 47-49). Plaintiffs have not made any allegations in the Proposed Amended CDC that would give the Court a basis to reconsider its findings on this issue. Thus, this Court should not allow Plaintiffs to resurrect their Arkansas, South Dakota, and Tennessee breach of implied warranty claims.

This Court should not allow Plaintiffs to revive their previously-dismissed claims because they are futile, despite any "new" allegations in the Proposed Amended CDC.

**D. Plaintiffs' request to bring new causes of action for aiding-and-abetting conspiracy should be denied.**

The Court should not allow Plaintiffs to add their new aiding and abetting claims at this point in the litigation. This Court invited Plaintiffs to clarify whether they were asserting an aiding-and-abetting conspiracy claim *nine months ago*, when it ruled on Defendants' motions to dismiss in February. ECF #302 at 31. The *Bader Farms* Plaintiffs responded to the Court's request for clarification the following month. *See* Plaintiffs' Motion for Leave to File Third Amended Complaint and Integrated Memorandum in Support (*Bader Farms* ECF #162) at 1. Meanwhile, the CDC Plaintiffs did nothing. Instead, they sat on their hands until class certification discovery closed and only then requested leave to amend to add claims for aiding-and-abetting liability. The proposed amendment should be denied because the CDC Plaintiffs offer no justification for their delay, and because adding an entirely new cause of action *after* class experts have been disclosed and deposed, and after *Daubert* briefing directed to those experts has been completed, would unfairly prejudice Defendants.

Also, the Court should bar Plaintiffs from asserting causes of action for aiding-and-abetting civil conspiracy because the claims would not survive a motion to dismiss.

Under Arkansas law, civil conspiracy claims must be predicated on an intentional tort. *Green v. Skyline Highland Holdings LLC*, 2018 WL 3800240, at *5 (E.D. Ark. June 12, 2018); *Benton v. Merrill Lynch & Co., Inc.*, 2007 WL 1232165, at *2 (E.D. Ark. Apr. 26, 2007) ("The tort of aiding and abetting fraud—assuming that Arkansas would recognize such a theory—must include an element of scienter."). The amended complaint fails to meet this requirement because a (1) violation of the Lanham Act is not an

intentional tort;[14] and (2) Plaintiffs' trespass claims contain the same fatal flaw this Court highlighted in its prior ruling—namely, they do not allege Defendants maintained post-sale control over its products. *In re Dicamba Herbicides Litig.*, 359 F. Supp. 3d 711, 728 (E.D. Mo. 2019) (dismissing Arkansas trespass claims and noting "here, a manufacturer has sold its product and no longer exerts control over it"). Because Plaintiffs' remaining torts sound in negligence and strict liability, the Proposed Amended CDC lacks the necessary intentional tort to sustain a claim for aiding and abetting civil conspiracy. *See Green*, 2018 WL 3800240, at *5.

Likewise, Illinois Plaintiffs cannot sustain a conspiracy claim under Restatement (Second) of Torts § 876, for two reasons. First, aiding and abetting liability requires proof that "the party whom the defendant aided performed a wrongful act that caused an injury." *Johnson v. Filler*, 109 N.E.3d 370, 374 (Ill. App. 2018). But neither selling nor conspiring to sell a product is in and of itself a wrongful act. *See Champion Parts, Inc. v. Oppenheimer & Co.*, 878 F.2d 1003, 1008 (7th Cir. 1989); *see also Sanke v. Bechina*, 576 N.E.2d 1212, 1218 (Ill. App. Ct. 1991). The crux of Plaintiffs' conspiracy allegations are that (1) BASF Corporation sold older versions of dicamba herbicide to aid and abet the launch of Xtend seed (prior to gaining EPA registration of an in-crop dicamba approved for over-the-top spraying); and (2) Monsanto "supported, promoted, and substantially

---

[14] *See POM Wonderful LLC v. Purely Juice, Inc.*, 362 F. App'x 577, 579 (9th Cir. 2009) ("It is settled that intent is not an element of a Lanham Act false advertising claim"); *see also Vector Prod., Inc. v. Hartford Fire Ins. Co.*, 397 F.3d 1316, 1319 (11th Cir. 2005); *Bass Buster, Inc. v. Gapen Mfg. Co.*, 420 F. Supp. 144, 160 (W.D. Mo. 1976); *Coachtrans, Inc. v. Uber Techs., Inc.*, 2016 WL 4417261, at *8 n.8 (E.D. Pa. Aug. 19, 2016).

assisted the sale and use of BASF Corporation's older dicamba formulations (*e.g.*, Clarity)" by selling Xtend seed. (Proposed Amended CDC ¶ 1024). Plaintiffs' conspiracy claims premised on such allegations are contrary to public policy and invite the Court to expand state law. *See Tosh*, 472 N.E.2d at 592. The Court should decline Plaintiffs' request to extend liability beyond the bounds of established state law. *See Crozier v. Wint,* 736 F.3d 1134, 1138–39 (8th Cir. 2013); *see also, e.g.*, *In re Dicamba Herbicides Litig.*, 359 F. Supp. 3d at 726.

Second, Plaintiffs' conspiracy claims, including those predicated on aiding and abetting, fail because they are impermissibly duplicative of the torts underlying them and thus subject to dismissal under Illinois law. "A conspiracy claim enables a plaintiff to hold co-conspirators jointly liable for actions by other members of the conspiracy." *Doctor's Data, Inc. v. Barrett*, 170 F. Supp. 3d 1087, 1159 (N.D. Ill. 2016). As a result, "a conspiracy claim is only actionable if it is based on new facts or seeks to extend liability for the underlying tort to new defendants." *Id.*; *see also Linkepic Inc. v. Vyasil, LLC*, 370 F. Supp. 3d 906, 925 (N.D. Ill. 2019).

To be certain, "[t]here can be no aiding and abetting liability absent the commission of an underlying tort." *Empire Indus. Inc. v. Winslyn Indus., LLC*, No. 18 C 698, 2019 WL 2743470, at *5 (N.D. Ill. June 30, 2019) (internal quotes omitted). Plaintiffs seek to re-assert Illinois tort claims for failure to warn, negligence, design defect, ultrahazardous activity, nuisance, negligent training, and violation of Illinois's consumer protection statute. (Proposed Amended CDC ¶¶ 844-987). Moreover, they assert each claim against Defendants individually and allege that Defendants engaged in

identical tortious conduct underlying each claim. (*Id.*) Plaintiffs' Illinois civil conspiracy claims are duplicative and thus not actionable as separate claims because they: (1) allege Defendants committed the same tortious acts forming the basis of their Illinois civil conspiracy claims; (2) fail to set forth facts not already presented in Counts XV through XXIV; and (3) do not seek to extend liability to defendants beyond Monsanto and BASF Corporation. *See Am. Transp. Grp., LLC v. Power*, 2018 WL 1993204, at *6 (N.D. Ill. Apr. 27, 2018) (holding that the plaintiff's state law civil conspiracy claim was duplicative, and thus not actionable as a separate claim because it neither set forth facts not already presented in prior counts nor sought to extend liability from one defendant to another); *see also LoggerHead Tools, LLC v. Sears Holding Corp.*, 19 F. Supp. 3d 775, 784 (N.D. Ill. 2013); *Thermodyne Food Serv. Prods., Inc. v. McDonald's Corp.*, 940 F. Supp. 1300, 1310 (N.D. Ill. 1996). Consequently, Plaintiffs' request to add a claim for aiding and abetting civil conspiracy under Illinois law should be denied. *See Mission Measurement Corp. v. Blackbaud, Inc.*, 287 F. Supp. 3d 691, 725 (N.D. Ill. 2017).

Finally, Plaintiffs may not assert claims for aiding and abetting civil conspiracy under Missouri law because Missouri does not recognize such a cause of action, as this Court itself recognized just months ago. *See Bader Farms, Inc. v. Monsanto Co.*, 2019 WL 3017425, at *7 (E.D. Mo. July 10, 2019) ("Missouri appears not to have recognized the aiding-and-abetting tort under § 876(b))." (citing cases)). This Court refused to extend Missouri law in *Bader* beyond its traditional purview because of the uncertainty as to whether the Missouri Supreme Court would adopt the new cause of action. *See id.* There is no reason for the Court to diverge from that ruling here, and Plaintiffs do not offer any

such reason in their motion to amend. Because Missouri has not recognized aiding and abetting civil conspiracy claims under Section 876(b), the Court should reject Plaintiffs' (second) invitation to create new state law. *See Crozier*, 736 F.3d at 1138–39 ("Federal courts sitting in diversity do not create state law").

## CONCLUSION

For these reasons, Defendants request that the Court deny Plaintiffs' Motion for Leave to File a First Amended Crop Damage Master Complaint to the extent it seeks to reassert any claims already dismissed by this Court's February 6, 2019 Order and to the extent it seeks to bring aiding-and-abetting conspiracy claims under the laws of Arkansas and Illinois.

Respectfully submitted,

DATED: November 27, 2019

**FAEGRE BAKER DANIELS LLP**

/s/ *John P. Mandler*
John P. Mandler
2200 Wells Fargo Center
90 South Seventh Street
Minneapolis, MN 55402
Telephone: (612) 766-7000
Facsimile: (612) 766-1600
Em: John.Mandler@FaegreBD.com

and

Tarifa B. Laddon (admitted *pro hac vice*)
11766 Wilshire Blvd., Suite 750
Los Angeles, CA 90025-6543
Telephone: (310) 500-2090
Facsimile: (310) 500-2091
Em: Tarifa.Laddon@FaegreBD.com

and

Ross W. Johnson (admitted *pro hac vice*)
801 Grand Avenue, 33rd Floor
Des Moines, IA 50309
Telephone: (515) 248-9000
Facsimile: (512) 248-9010
Em: Ross.Johnson@FaegreBD.com

and

HEPLERBROOM, LLC
Troy A. Bozarth, Bar No. 5209515
Thomas J. Magee, Bar No. 32871MO
Charles N. Insler, Bar No. 58623MO
One Metropolitan Square
211 North Broadway, Suite 2700
St. Louis, MO 63102
Telephone: (314) 241-6160

Facsimile: (314) 241-6116

**ATTORNEYS FOR BASF CORPORATION**

and

*/s/ A. Elizabeth Blackwell*

A. Elizabeth Blackwell, #50270MO
BRYAN CAVE LEIGHTON PAISNER LLP
One Metropolitan Square
211 North Broadway, Suite 3600
St. Louis, Missouri 63102
Telephone: (314) 259-2000
Facsimile: (314) 259-2020
Liz.blackwell@bclplaw.com

and

Jeffrey A. Masson, #60244MO
Daniel C. Cox, #38902MO
Christopher M. Hohn, #44124MO
Jan Paul Miller, #58112MO
Kimberly M. Bousquet, #56829MO
One US Bank Plaza
St. Louis, Missouri 63101
Telephone: (314) 552-6000
Facsimile: (314) 552-7000
jmasson@thompsoncoburn.com
dcox@thompsoncoburn.com
chohn@thompsoncoburn.com
jmiller@thompsoncoburn.com
kbousquet@thompsoncoburn.com

and

John J. Rosenthal
WINSTON & STRAWN LLP
1700 K Street, N.W.
Washington, DC 20006-3817
Telephone: (202) 282-5000
Facsimile: (202) 282-5100
jrosenthal@winston.com

**ATTORNEYS FOR MONSANTO COMPANY**

**CERTIFICATE OF SERVICE**

I certify that on November 27, 2019, I electronically filed a true and correct copy of the foregoing document with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record and that a copy of any documents filed under seal will be sent via electronic mail to all counsel of record.

*/s/ John P. Mandler*